ACME LUMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 37802. Promulgated January 29, 1932.

J. H. Amick, C. P. A., for the petitioner.
John D. Kiley, Esq., for the respondent.

404

OPINION.

SMITH: Petitioner alleges that the respondent has erred in refusing to permit it to report its profits from the sales of real estate in 1924, 1925, and 1926 on the installment basis. The petitioner's books were kept upon the accrual basis. All profits from the sales of real estate were entered in the petitioner's books at the time of the sales and no profit was shown in any year on account of collections on sales made in prior years. In some instances where collections made during the years were not reported, the properties were repossessed and resold in a subsequent year and the profits reported in the year of the resale.

The profits on the real estate sales were computed without any allowance for selling costs or other overhead expenses. The cost used by the petitioner in computing its profits represented only the cost of the lot and the lumber furnished to the contractors up to the time of the foreclosure by the petitioner. Apparently the other expenses of completing the construction and selling the property went into operating expenses of the current year. We do not know the extent of these expenses or whether they can now be determined from the petitioner's records.

It is obvious that the installment method of reporting profits computed in this manner would not correctly reflect the petitioner's taxable income. The result would be excessive expense deductions in the year of the sale and excessive installment profits in subsequent years.

At the hearing, the petitioner offered in evidence a schedule prepared from its books and records purporting to show all of the sales of real estate made on the installment basis on which collections were made in 1924, 1925, and 1926, and all necessary data for computing the profits therefrom on the installment basis. It was brought out upon cross-examination, however, that there were other sales upon which payments were received in the years in question which did not appear on the schedule, as where the properties were repossessed and resold in a subsequent year. There were still other sales not included

in the schedule, some of which resulted in losses rather than profits and some of which were treated as closed transactions in the taxable years.

The evidence contains no information about the sales of lumber except that they usually involved a small down payment and installment payments running for one or more years. The petitioner is not protesting the respondent's determination that the profits from the sales of lumber are taxable on the accrual rather than on the installment basis.

In *Warren Reilly*, 7 B. T. A. 1327, 1330, we said:

It is a cardinal principle of the taxing statutes that the method of accounting employed shall clearly reflect the income; and a taxpayer may not compute its income partly on one basis and partly on another, as it is apparent is contemplated by the suggested method, for the very reason that income is not thereby clearly reflected. To treat the collections made during the year, on installment sales of prior years, as income for the years in which such sales were made, while at the same time returning as income for 1919 only the profits upon the sales made in that year which are actually reduced to possession, is, in effect, an accounting for the income on sales of prior years on the accrual basis, and for the income on sales made in 1919 on the installment sales basis. Both methods can not be used in computing the income of one year; one must give way to the other. * * *

The installment plan for reporting profits, as we have said, does not depend upon any prescribed methods of bookkeeping or accounting. But it is necessary that the accounts kept by the taxpayer permit of a correct determination of tax liability by the installment method. *L. S. Weeks Co.*, 6 B. T. A. 300; *Warren Reilly, supra; Grand Rapids Show Case Co.*, 12 B. T. A. 1024.

However, we are unable to determine from the evidence before us that the petitioner has met that condition with respect to its real estate sales. In our opinion, the petitioner's use of the installment method of reporting its gains from the sales of real estate did not result in a true statement of its taxable income and was properly rejected by the respondent. See *Yost Furniture Co.*, 5 B. T. A. 652; *L. S. Weeks Co., supra; Herman Tillman, Administrator*, 10 B. T. A. 4; *Renier Music House, Inc.*, 15 B. T. A. 241; *H. A. Dunham*, 13 B. T. A. 582.

The petitioner alleges that the respondent erred in disallowing the deduction in 1924 and 1925 of the respective amounts of $5,158.09 and $3,160.51, representing additions to a reserve for bad debts or " bad debts ascertained to be worthless within said years and to cover which, credits were made to reserve for bad debts " in the said amounts. The respondent has disallowed the deduction of the disputed amounts for reason, as stated in his deficiency notice, that the petitioner elected to claim a deduction for specific bad debts in its

return for 1921 and may not, in the absence of permission from the Commissioner, change to the bad debt reserve method in the subsequent years.

We have heretofore held that, under the provisions of section 234 (a) (5) of the Revenue Act of 1921, and the Commissioner's Regulations 62, article 151, taxpayers were given the option of deducting either specific bad debts or a reasonable addition to a reserve for bad debts, and, having elected one of such methods, were bound thereby in subsequent years unless granted permission by the Commissioner to change to the other. *Kay Manufacturing Co.*, 18 B. T. A. 753; *Gustave Rader Co.*, 19 B. T. A. 12; *Momsen-Dunnegan-Ryan Co.*, 24 B. T. A. 365; *Athol Manufacturing Co.*, 22 B. T. A. 105; affd., 54 Fed. (2d) 230. In our opinion the facts do not show that the petitioner used the reserve method of treating its bad debt deductions in 1921, nor is there any claim or proof that permission was granted to change as required by the Commissioner's regulations. The petitioner carried in its books in that year an account styled " suspense account " showing numerous credits and debits including a credit of $1,486.84 entered December 31, 1921, and representing approximately 1 per cent of petitioner's gross sales of that year. At December 31, 1921, there was a small balance of $5.85 which was closed out into expense account. The petitioner's secretary and manager testified that he always passed upon the accounts and that whenever a debt became worthless he instructed the bookkeeper to charge it off. In these circumstances we find no error in the respondent's determination that the petitioner did not employ the reserve method for treating its bad debts in its 1921 return. There is no evidence before us that the respondent has not allowed the deduction of all of the debts ascertained to be worthless and charged off by the petitioner during 1924 and 1925.

*Judgment will be entered for the respondent.*